UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| ARcare d/b/a Parkin Drug Store and Bald Knob Medical Clinic, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CURADEN USA, INC.<br><br>Defendant. | Case No. 1:16-cv-501<br><br>Judge Timothy S. Black |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S COMBINED MOTION TO DISMISS, AND IN THE ALTERNATIVE, MOTION TO STRIKE AND MOTION FOR STAY**

### I.     INTRODUCTION

On July 8, 2016, Defendant Curaden USA, Inc. ("Defendant") filed a Combined Motion to Dismiss, And, in the Alternative, Motion to Strike, And Motion For Stay ("Combined Motion") in response to Plaintiff ARcare, Inc.'s ("Plaintiff") Class Action Complaint against the company for its policy and practice of sending facsimile advertisements with non-compliant opt-out notices in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq*.

First, Defendant seeks to dismiss Plaintiff's TCPA claim for failure to state a claim under Fed. R. Civ. P. 12(b)(6). Defendant's argument, however, suffers from several major defects. Defendant mischaracterizes Plaintiff's Complaint as a "threadbare recitation of statutory and administrative code provisions" by focusing entirely on allegations that quote directly from the TCPA. *See* Defendant's Motion, at 4 – 5. Defendant also mischaracterizes the elements necessary for a TCPA claim predicated on inadequate opt-out notices. In addition, Defendant

1

improperly conflates two distinct arguments in an attempt to avoid its obligations under the Administrative Orders Review Act (the "Hobbs Act"), 28 U.S.C. § 2342(1).

Next, Defendant seeks to strike portions of Plaintiff's Complaint concerning the class allegations, the proposed class definition, and requests for statutory damages. Plaintiff's class allegations, however, provide a sufficient amount of detail demonstrating that typicality, commonality, and adequacy will be met as required under Fed. R. Civ. P. 23(a). Likewise, the proposed class is not fail safe because it establishes the identity of putative class members solely on the basis of whether the member received a facsimile advertisement from Defendant substantially similar to the fax Plaintiff received. Similarly, Plaintiff's requests for statutory damages are not the type of scandalous and/or redundant material for which a motion to strike is the proper relief.

Finally, Defendant seeks to stay proceedings in this case pending the outcome of *Bais Yaakov v. Federal Communications Commission,* No. 14-1234 (D.C. Cir.), in which the validity of 47 CFR 64.1200(a)(4)(iv) ("the Solicited Fax Rule") is being challenged. At the heart of Defendant's request for a stay in an implicit acknowledgment that it sent faxes, both solicited and unsolicited, that lacked the required opt-out language in compliance with the TCPA. Rather than have this Court rule on this matter with the facts and law as they currently exist, Defendant seeks to delay proceedings in the hope it will be "bailed out" of the consequences of its conduct by another circuit. Defendant seeks such a result in spite of the unreasonable delay and prejudice it will inflict upon Plaintiff and the putative class members.

For these reasons, Plaintiff respectfully requests that this Court deny Defendant's Combined Motion.

## II.     FACTUAL BACKGROUND

On February 19, 2016, Defendant sent an unsolicited advertisement to Plaintiff's facsimile machine. *See* Plaintiff's Complaint, at ¶ 12. The fax displayed Defendant's teeth whitening products, and referred to the products as "Exceptional Whitening Toothpaste!" *Id.* The following statement appeared near the bottom of the fax: "If you would like to be removed from our list, just dial 888-879-1777 from your phone and enter fax #." Exhibit A to Plaintiff's Complaint. Plaintiff alleges that it neither invited nor granted permission to Defendant to send the advertisement. *Id.* at ¶ 15.

On April 28, 2016, Plaintiff filed a Class Action Complaint against Defendant, alleging violations of the TCPA. In addition to bringing claims on its own behalf, Plaintiff brought suit on behalf of a nationwide class of all persons and entities "who hold telephone numbers that received a facsimile transmission [in the prior four years] from Defendant . . . that 1) promotes Defendant's products and 2) contains an opt-out notice identical or substantially similar to that contained [in] . . . Exhibit A to the Complaint." *Id.* at ¶ 17.  In particular, Plaintiff alleged that Defendant violated § 227(b)(1)(C) of the TCPA by faxing unsolicited advertisements bearing non-compliant opt-out notices to Plaintiff and the ' fax machines. *See* Plaintiff's Complaint, at ¶¶ 26 – 41. In terms of actual damages, Plaintiff alleged that Defendant's actions had caused Plaintiff and Class Members to lose paper, toner, and ink, and had interfered with their legitimate business activities. *Id.* at ¶¶ 3, 32, 39.  Plaintiff also alleged that Defendant's actions were willful, and thus, merited enhanced statutory damages under the TCPA. *Id.* at ¶¶ 33, 40.

On July 8, 2016, Defendant responded to the Complaint with a Combined Motion to Dismiss, And, in the Alternative, Motion to Strike, And Motion For Stay.

### III. ARGUMENT

#### A. Plaintiff's Allegations Are Sufficient to Survive a Motion to Dismiss Under 12(b)(6)

In considering a motion to dismiss for failure to state a claim, a court must "'construe the complaint in the light most favorable to the plaintiff,' accepting as true all the plaintiff's factual allegations." *Gascho v. Global Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 690, 2012 U.S. Dist. LEXIS 42366, 2012 WL 1048823 (S.D. Ohio 2012) (citations omitted). "The merits of the claims set forth in the complaint are not at issue on a motion to dismiss for failure to state a claim." *Id.* As such, dismissal is appropriate "only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief." *Id.*

##### 1. Plaintiff's Allegations State a Valid TCPA Claim

Under § 227(b)(1)(C) of the TCPA, it is illegal to send an unsolicited advertisement via facsimile transmission unless three conditions are met: (1) the sender and the recipient had an "established business relationship;" (2) the recipient either communicated the fax number to the sender directly or made it publicly available; and (3) the unsolicited advertisement contained an adequate opt-out notice. A plain reading of the statute indicates that ***a sender must meet all three conditions*** to avoid liability for sending unsolicited fax ads. Accordingly, should a sender fail to provide adequate opt-out language on his or her faxes, he or she could be held liable even if the other conditions had been met.

The F.C.C. has promulgated regulations specifying the conditions that an opt-out notice must meet to be compliant under the TCPA. *See* 47 C.F.R. § 64.1200(a)(4)(iii). These conditions are: (1) The notice must be made clearly and conspicuously on the first page of the ad; (2) The notice must state that (a) the recipient may request the sender not to fax further ads and (b)

4

failure to comply with a valid request within 30 days is a violation; (3) The notice must state the requirements for a valid opt-out request. Those requirements are (a) that the request identify the fax numbers to which ads should not be sent; (b) that the request be made to the number identified in the sender's ad; and (c) that the person making the request does not later invite the sender to fax further ads; (4) The notice must contain a domestic telephone number *and* fax number where the recipient may request the sender to stop sending faxes. If neither number is toll-free, the sender must provide an additional cost-free mechanism by which the recipient can request that the sender's faxes stop; and (5) The recipient must be able to make an opt-out request 24/7. *See* 47 C.F.R. § 64.1200(a)(4)(iii).

In this instance, Plaintiff's Complaint alleges a valid TCPA claim predicated on Defendant's inclusion of inadequate opt-out notices on its faxes. Although Defendant has characterized Plaintiff's Complaint as "nothing more than a threadbare recitation of statutory and administrative code provisions," this is because Defendant has completely ignored the paragraphs in which Plaintiff alleges facts supporting its claim. Paragraphs 12 through 16 provide details demonstrating when and where the unsolicited fax was sent, as well as the substance of the fax and the total amount of faxes sent to Plaintiff. These allegations are further supported by the fax attached as Exhibit A, which shows that Defendant's opt-out notice did not (1) inform Plaintiff that it may opt-out of receiving future fax advertisements; (2) state that a failure to comply with a valid request within 30 days is a violation; nor (3) provide both a domestic telephone number and a facsimile machine number—one of which must be cost-free—that Plaintiff may contact to opt out of future faxes. Thus, Plaintiff's allegations demonstrate Defendant's violation of the TCPA by failing to include compliant opt-out notices on its faxes.

Defendant seeks to further undermine Plaintiff's claim by mischaracterizing the law. According to Defendant, in addition to demonstrating a non-compliant opt-out notice, a Plaintiff seeking to prevail on a junk fax claim under the TCPA must demonstrate (1) a lack of an established business relationship between the parties, (2) that the Defendant improperly obtained the Plaintiff's facsimile number, and (3) that the Plaintiff had exercised a prior opt-out notice. Two things are wrong with this statement of law. First, Defendant is simply incorrect in claiming that Plaintiff must demonstrate that it used a prior opt-out notice—nothing in the TCPA would support this statement. Second, Plaintiff need not prove that Defendant failed to meet all three of the conditions required for a sender of unsolicited faxes. As discussed above, a sender can be found liable under the TCPA for failing to provide adequate opt-out language on his or her unsolicited faxes even if the other conditions *had* been met.[1] For these reasons, Defendant's Motion to Dismiss should be denied.

### 2. The Hobbs Act Prevents Defendant From Attacking the Validity of the Solicited Fax Rule in this Venue

Defendant also argues that this Court should dismiss Plaintiff's claim because the putative class encompasses recipients of both unsolicited and solicited faxes, and thus, will implicate the Solicited Fax Rule, which requires senders of solicited faxes to include compliant opt-out notices. Defendant argues that this rule exceeds the F.C.C.'s rulemaking authority, and as such, unconstitutionally impinges upon Defendant's First Amendment right to speak to its customers.

Although Defendant invokes the First Amendment, it is primarily challenging the Solicited Fax Rule's validity, i.e. that the F.C.C. exceeded its rulemaking authority. Indeed,

---

[1] Plaintiff has pled that it did not give permission nor invite Defendant to send the faxes in question. *See* Plaintiff's Complaint, at ¶ 15.

Defendant's intent to combine these two distinct arguments into one is evidenced by the following statement:

> The authority given to the FCC by Congress did not extend to <u>solicited</u> faxes. Thus, any regulation adopted the FCC (such as the Solicited Fax Rule) that purport to regulate solicited faxes violate the First Amendment to the U.S. Constitution.

Defendant's Motion, at 6 (emphasis in original). However, these are entirely separate arguments. To challenge a regulation's constitutionality, a party must first concede that the regulation was passed in accordance with Congress's authorization. *See Nack v. Walburg*, 715 F.3d 680, 687 (8th Cir. 2013) ("Finally, [Defendant] argues that, ***if the regulation must be interpreted as urged by the FCC, then it is unconstitutional***") (emphasis added). Here, as evidenced by the above quote, Defendant has not conceded that the F.C.C.'s promulgation of the Solicited Fax Rule was in accordance with Congress's authorization. As such, Defendant's argument is a thinly veiled attack on the Solicited Fax Rule's validity.

The question of whether the F.C.C. exceeded its rulemaking authority by promulgating the Solicited Fax Rule is not an issue that can be resolved by this Court. Under § 2342(1) of the Hobbs Act, "[a] party challenging an FCC regulation as ultra vires must first petition the agency itself and, if denied, appeal the agency's disposition directly to the Court of Appeals as provided by the statute." *Nack v. Walburg*, 715 F.3d at 685 (citations omitted).[2] In *Nack*, a sender of a solicited fax advertisement argued on appeal that the recipient's invocation of the Solicited Fax Rule was misplaced because the Rule had been promulgated outside of the F.C.C.'s rulemaking

---

[2] *See also Leyse v. Clear Channel Broadcasting, Inc.,* 545 F.App'x 444, 459 (6th Cir. 2013) ("[T]he Hobbs Act would not have barred Leyse from challenging the TCPA exemption by petitioning the FCC for a declaratory ruling under 47 C.F.R. § 1.2 or to initiate a new rulemaking under 47 C.F.R. § 1.401. The FCC's denial of such a petition would then be reviewable in the courts of appeals . . . . Leyse, however, did not follow the prescriptions of the Hobbs Act. Instead he filed the instant suit.")

authority. *Id.* at 684. Noting the Hobbs Act's applicability to the suit, the court stated that where a party raises a "defense that a private enforcement action is based upon an invalid agency order, 'the statutory procedure for review provided by Congress remains applicable.'" *Id.* at 686 (citations omitted).

Here, as in *Nack*, Defendant has argued that Plaintiff's claim arises under an invalid F.C.C. rule. Whatever the merits of such an argument, this Court cannot adjudicate this question under the Hobbs Act, and as such, a motion to dismiss on that basis must be denied.

### B. Plaintiff's Allegations Are Sufficient to Survive a Motion to Strike Under Fed. R. Civ. P. 12(f)

A motion to strike a pleading's allegations "is a drastic remedy which is seldom granted absent a showing of real prejudice to the moving party." *Swamiji Sri Sel Vam Siddhar v. Sivanesan,* No. 2:13-cv-6504667, 2013 WL 6504667, at * 9, 2013 U.S. Dist. LEXIS 173414 (S.D. Ohio Dec. 11, 2013). Allegations are generally struck "for being scandalous or impertinent only where the language is extreme or offensive." *Id.* With regard to striking class allegations, such relief may granted only when "no proffered or potential factual development offers any hope" of demonstrating the existence of a class. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011).

#### 1. Plaintiff's Class Allegations Demonstrate Typicality, Commonality, and Adequacy as Required by Fed R. Civ. P. 23(a)

Plaintiff's Complaint demonstrates that Rule 23's typicality requirement will be met at the class certification stage. Typicality is present "if there is a sufficient relationship between the injury to the named plaintiff and the conduct affecting the proposed class." *Laichev v. JBM, Inc.*, 269 F.R.D. 633, 640 (S.D. Ohio 2008) (citing *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000)). "'When it is alleged that the same unlawful conduct was directed at or affected both the

8

named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims.'" *Id.* at 640-41 (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.13 (3d ed.1992) (internal quotation marks omitted)).

Here, Plaintiff's Complaint alleges that Defendant violated the TCPA by sending facsimile advertisements bearing non-compliant opt-out notices to both Plaintiff and the putative class. Plaintiff alleges further that it has suffered the same injuries as the putative class, and seeks the same relief. *See* Plaintiff's Complaint, at ¶¶ 22, 32 – 34, 39 – 41. When viewed together, these allegations demonstrate Plaintiff will be able to show that Defendant has directed the same unlawful conduct towards both Plaintiff and the putative class.

Likewise, Plaintiff's Complaint demonstrates that Rule 23's commonality requirement will be met. While commonality refers to "common questions of fact or law in the plural, there only needs to be one common issue." *Laichev,* 269 F.R.D. at 640 (citing *Alkire v. Irving,* 330 F.3d, 802, 820 (6th Cir.2003)). This element is present "'as long as the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation.'" *Id.* (quoting *Day v. NLO, Inc.*, 144 F.R.D. 330, 333 (S.D.Ohio 1992)).

Here, Plaintiff's Complaint alleges that Plaintiff and the putative class have been affected by Defendant's general policy of including non-compliant opt-out notices in its faxes. *See* Plaintiff's Complaint, ¶ 1. Indeed, this policy is the heart of this ligation, as Plaintiff has sought liability under the TCPA solely on the basis of Defendant's inclusion of inadequate opt-out notices in its fax ads. *See id.* at ¶¶ 29 – 30, 37. Plaintiff has even included "Whether Defendant's advertisements contained the opt-out notice required by law," as one of the common questions of

9

law and fact affecting the putative class. When viewed collectively, these statements allege that Plaintiff and the putative class have been affected by a general policy of Defendant.

Finally, Plaintiff's Complaint demonstrates that Rule 23's adequacy requirement will be met. Adequacy of representation is present where "1) the representative [has] common interests with unnamed members of the class, and 2) . . . the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re American Medical Sys.*, 75 F.3d 1069, 1083 (6th Cir. 1996) (citations omitted). "[T]he most important aspect of the adequacy factor of Rule 23 is that all class members' interests are aligned." *Pelzer v. Vassalle*, ___ F. App'x. ___, 2016 WL 3626825, at * 9 (6th Cir. 2016).

Defendant argues that adequacy of representation is lacking because "Plaintiff has different arguments than others who fall within the definition of the class." Defendant's Motion, at 9. This statement is untrue for the same reasons typicality will be shown to be present in this case. *See Stanich v. Travelers Indem. Co.*, 249 F.R.D. 506, 523, n.37(N.D. Ohio 2008) ("The primary questions relating to typicality and adequacy 'tend[] to merge' because both look to potential conflicts and to 'whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'") (citations omitted). As discussed earlier, Plaintiff's Complaint alleges that it and the putative class have both suffered the same injuries from Defendant's use of inadequate opt-out notices in its facsimile advertisements. Plaintiff also seeks the same type of relief for itself and the putative class. These allegations demonstrate that the interests of Plaintiff and the putative class are aligned.

As the foregoing demonstrates, Plaintiff's Complaint alleges typicality, commonality, and adequacy in sufficient detail. Thus, because Plaintiff's Complaint reveals that Plaintiff will be able to meet Rule 23's requirements, Defendant's Motion to Strike should be dismissed.

### 2. Plaintiff's Proposed Class Definition Is Not Fail-Safe

Defendant argues that Plaintiff's proposed class is fail-safe because it is defined as a class of "any persons who received faxes by or on behalf of the Defendant promoting its products, which faxes did not contain an opt-out notice." Defendant's Motion, at 9. This definition, however, does not constitute a fail-safe class. A class is fail-safe when "the factual inquiry in the case would at the same time ***establish the defendant's liability and establish who is a member of the class.***" *Sherrod v. Enigma Software Grp. USA, LLC*, No. 2:13-cv-36, 2016 WL 25979, at * 3 (S.D. Ohio Jan. 4, 2016) (emphasis added). In this instance, this Court's factual inquiry into Defendant's liability under the TCPA would not establish the identity of Plaintiff's putative class members. For reference, Plaintiff's putative class is defined as:

> All persons and entities who hold telephone numbers that received a facsimile transmission from Defendant at any time during the applicable statute of limitations to present (the "Class Period") that 1) promotes Defendant's products and 2) contains an opt-out notice identical or substantially similar to that contained on the facsimile advertisement attached as Exhibit A to the Complaint.

Plaintiff's Complaint, at ¶ 17. This definition establishes the identity of putative class members solely on the basis of whether the member received a facsimile advertisement from Defendant substantially similar to the fax ad attached to Plaintiff's Complaint as Exhibit A. It differs from the class definition in *Lindsay Transmission, LLC v. Office Depot, Inc.*, in which the Plaintiff had defined its class to include "only those persons to whom defendant sent faxes without prior consent and with whom defendant did not have an established business relationship." No. 4:12-cv-221, 2013 WL 275568, at * 4 (E.D. Mo. Jan. 24, 2013). Because that definition required the

11

court "to engage in an improper merits evaluation to determine who is in the class," it was considered a fail-safe class. *Id.* Here, the identity of the putative class members can be ascertained from Defendant's business records. In addition, should this Court determine that Defendant's facsimile advertisements contain *adequate* opt-out notices, the entire class would be bound by this judgment. Thus, Plaintiff's proposed class is not fail-safe, and Defendant's objections on this basis should be dismissed accordingly.

### 3. Plaintiff's Requests for Statutory Damages Are Neither Scandalous Nor Redundant

Finally, Defendant requests that this Court strike Plaintiff's allegations concerning its requests for statutory damages. Defendant argues that statutory damages are not warranted in this case. Rule 12(f) *may* be used to strike damages allegations, *see Burns v. Potter,* 2008 WL 630871, at * 2 (S.D. Ohio Mar. 7, 2008), but only where the plaintiff has no cognizable legal entitlement to the damages they seek. *Id.* at * 2-3 (striking plaintiff's damages punitive damages claim because "[p]unitive damages are not recoverable against a Federal Agency under The Rehabilitation Act" and "the [Federal Tort Claims Act] does not provide for punitive damages.").

By contrast, the plain language of the TCPA provides for statutory damages of $500 per fax, or up to $150 for willful violations. 47 U.S.C. § 227(b)(3). Moreover, such damages are routinely awarded in "junk fax" TCPA cases. *See, e.g., Siding and Insulation Group Co. v. Combined Ins. Group, Ltd., Inc.,* No. 1:11-cv-1062, 2014 WL 1577465, at * 4 (N.D. Ohio Apr. 17, 2014) ("Court has granted partial summary judgment to Plaintiff with respect to 50 unauthorized faxes that were sent in violation of the TCPA. Accordingly, Plaintiff is entitled at this time to a judgment in the amount of $25,000.00 (50 faxes multiplied by $500)."). While Plaintiff must of course establish an entitlement to such damages in the normal course of this

12

litigation, there is no basis for striking statutory damages at this preliminary stage. For this reason, the motion to strike statutory damages entirely should be denied.[3]

### C. This Case Should Not Be Stayed Because this Court Is Capable of Considering Plaintiff's Claims

Although courts have an inherent power to stay proceedings, they are generally reluctant to exercise it. "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Landis v. North Am. Co.*, 299 U.S. 248 (1936). It is well established that "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity' within the meaning of *Landis*." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, (9th Cir. Cal. 2005).

#### 1. The Ruling Sought by Defendant Only Addresses a Part of the Putative Class

As a threshold matter, Defendant's Motion to Stay is premised entirely upon the fact that Plaintiff's proposed class definition encompasses solicited faxes that lack the proper opt-out language. However, this ignores the Complaint's multiple allegations that the faxes sent by Defendant were unsolicited. Thus, Plaintiff's class, as alleged, would include those who have received both solicited and unsolicited faxes.

In *Around the World Travel, Inc. v. Unique Vacations, Inc.*, the plaintiff proposed the following class:

> All persons who (1) on or after four years prior the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability of any property, goods, or

---

[3] Defendant argues, in the alternative, that damages should be limited to $500 or $1500 *per fax* as opposed to *per violation*. Plaintiff concedes this alternative point and hereby withdraws its request for per-violation, rather than per-fax, statutory damages. *See Charvat v. GVN Michigan, Inc.,* 561 F.3d 623, 632 (6th Cir. 2009) ("Therefore, the term 'each such violation' must refer to "telephone call ... in violation of the regulations," and damages are awardable on a per-call basis."); *Siding and Insulation,* 2014 WL 1577465, at * 4 (applying damages on a per fax basis).

> services by or on behalf of Defendants, and (3) which did not display a proper opt-out notice.

No. 14-cv-12589, 2014 WL 6606953, at *2 (E.D. Mich. Nov. 19, 2014). The defendant filed a motion to stay proceedings in that case, arguing that "[b]ecause the proposed class encompasses both unsolicited and solicited fax advertisements," the case should be stayed until the F.C.C. decided whether to grant the defendant's waiver petition. *Id.* The court denied the stay request, noting that the defendant focused entirely on how the complaint defined the proposed class, yet ignored the complaint's multiple allegations that the faxes were unsolicited. *Id.* at * 4.

A similar result was reached in *Simon v. Healthways Inc.*, No. 14-cv-08022, 2015 WL 1568230 (C.D. Cal. Apr. 7, 2015). There, the plaintiff proposed the following class:

> [A]ll persons and entities that were at the time subscribers of telephone numbers to which material that discusses, describes or promotes any of Defendants' respective property, goods, or services (whether separately or in combination with the property, goods, or services of any other Defendant) was sent via facsimile transmission, commencing within four years preceding the filing of this action.

2015 WL 1568230, at *1. The defendant sought a stay while the F.C.C. considered its waiver petition, but the court denied the stay request. "[T]he Court will not blindly grant a stay, over the objection of Plaintiff, absent any evidence that Defendants obtained the prior express permission necessary to qualify for a waiver." *Id.* at * 6.

Here, as in *Around the World Travel, Inc.* and *Simon*, Plaintiff's Complaint alleges that the faxes sent by Defendant to Plaintiff were unsolicited. Notably, the first paragraph states that "[t]his case challenges Defendant's policy and practice of faxing **unsolicited** advertisements;" this statement mirrors a statement that the court in *Around the World Travel, Inc.* highlighted as evidence that the complaint encompassed unsolicited faxes. *See* Plaintiff's Complaint, at ¶ 1 (emphasis added); *Around the World Travel, Inc.*, 2014 WL 6606953, at *10. Plaintiff's

14

Complaint contains further allegations regarding unsolicited faxes. *See* Plaintiff's Complaint, at ¶ 12 ("On February 19, 2016, Defendant sent an unsolicited advertisement to Plaintiff's ink-and-paper facsimile machine"); ¶ 15 ("Defendant did not have Plaintiff's prior express invitation or permission to send advertisements to Plaintiff's fax machine"); ¶ 30 ("Defendant faxed unsolicited advertisements to Plaintiff . . .") ¶ 31 ("Defendant knew or should have known (a) that Plaintiff had not given express invitation or permission for Defendant to fax advertisements . . ."). In all, Plaintiff alleges that Defendant sent unsolicited faxes in no fewer than eleven allegations. *See id.* at ¶¶ 1, 12, 15, 21(c), 22, 27, 28, 30 – 31, 37 – 38. Thus, Defendant is incorrect in arguing that Plaintiff's Complaint "makes no distinction between faxes that were sent with consent and those that were sent without consent." Defendant's Motion, at 12.[4]

As the case is in the motion to dismiss stage, no evidence has been proffered regarding whether the faxes at issue in the case where unsolicited or solicited. Because there are unrebutted allegations of unsolicited faxes, determination of the case is not dependent upon the D.C. Circuit overturning the Solicited Fax Rule. Plaintiff is entitled to engage in discovery to determine whether Defendant can prove its claim that (any of) the faxes sent in this matter were solicited. For these reasons, a stay is not warranted.

### 2. A Stay Will Materially Harm and Prejudice Plaintiff and the Putative Class

The delay that would result from the requested request stay would unduly prejudice Plaintiff and the putative class. First, Plaintiff's ability to move for class certification would be unreasonably delayed. Rule 23 explicitly requires that class certification should be decided "at an

---

[4] The cases where a stay has been granted pending the Solicited Fax Rule have generally involved cases were the only allegations at issue involve solicited faxes. *See Raitport v. Harbour Capital Corp.*, No. 09-cv-156, 2013 WL 4883765, at *1 (D.N.H. Sept. 12, 2013) ("The amended proposed class definition in this case is premised upon . . . the sending of "solicited" facsimile advertisements.")

early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). Staying this litigation would conflict with and undermine the policy of Rule 23 and the TCPA.

Second, staying this action would unfairly deny Plaintiff and the putative class a prompt resolution of their claims based on Defendant's policy and practice of sending unsolicited fax advertisements with inadequate opt-out notices. The parties "have a strong interest in resolving their claims expeditiously and in vindicating any constitutional or statutory violations to which they may have been subjected." *Melendres v. Maricopa County*, No. 07-CV-02513, 2009 WL 2515618, at *2 (D. Ariz. Aug. 13, 2009); *see also Cisco v. National Ins. Co.*, No. 305-CV-521-J-33HTS, 2006 WL2789035, at *1 (M.D. Fla. Sept. 26, 2006) (plaintiffs have an interest in proceeding expeditiously with their litigation). These interests are greater still in private TCPA suits, which are considered "a uniquely effective way to protect a population already besieged by unwanted and aggressive solicitations from persons or companies hawking their products." *Jay Clogg Realty Group, Inc. v. Burger King Corp.*, 298 F.R.D. 304, 309 (D. Md. 2014). There is no valid reason to delay resolution of this matter, particularly when the case before the D.C. Circuit—no matter how it is resolved—would not would not affect Defendant's liability, given that Defendant has not yet demonstrated that it obtained Plaintiff's consent to receive the faxes

### IV. CONCLUSION

For the above reasons, Plaintiff respectfully requests that this Court deny Defendant's Combined Motion to Dismiss, And, in the Alternative, Motion to Strike, And Motion For Stay.

DATED: July 29, 2016　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　By*:*　　*/s/Matthew R. Wilson*

　　　　　　　　　　　　　　　　Matthew R. Wilson (Ohio Bar No. 0072925)
　　　　　　　　　　　　　　　　Email:  mwilson@meyerwilson.com
　　　　　　　　　　　　　　　　Michael J. Boyle, Jr. (Ohio Bar No. 0091162)
　　　　　　　　　　　　　　　　Email:  mboyle@meyerwilson.com
　　　　　　　　　　　　　　　　**MEYER WILSON CO., LPA**
　　　　　　　　　　　　　　　　1320 Dublin Road, Ste. 100
　　　　　　　　　　　　　　　　Columbus, OH  43215
　　　　　　　　　　　　　　　　Telephone:  (614) 224-6000
　　　　　　　　　　　　　　　　Facsimile:  (614) 224-6066


　　　　　　　　　　　　　　　　Randall K. Pulliam, Esq.
　　　　　　　　　　　　　　　　rpulliam@cbplaw.com
　　　　　　　　　　　　　　　　**CARNEY BATES & PULLIAM, PLLC**
　　　　　　　　　　　　　　　　2800 Cantrell Rd., Suite 510
　　　　　　　　　　　　　　　　Little Rock, Arkansas 72202
　　　　　　　　　　　　　　　　Telephone:  (501) 312-8500
　　　　　　　　　　　　　　　　Facsimile:  (501) 312-8505